UNITED STATES of America,
Plaintiff-Appellee,

v.

Salvatore CIRAMI et al., Defendants,

Salvatore Cirami & Margaret Cirami,
Defendants-Appellants.

No. 705, Docket 75–6104.

United States Court of Appeals,
Second Circuit.

Argued March 10, 1976.
Decided May 10, 1976.

Jeffrey S. Blum, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Elmer J. Kelsey, George G. Wolf, Attys., Tax Div., Dept. of Justice, Washington, D. C., David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., of counsel), for plaintiff-appellee.

Wallace Musoff, New York City (Wagman, Cannon & Musoff, Barry D. Gordon, New York City, of counsel, Carl Mione, Brooklyn, N. Y.), for defendants-appellants.

Before FRIENDLY, MULLIGAN and GURFEIN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal from an order of the United States District Court for the Eastern District of New York, Hon. Walter Bruchhausen, J., filed on October 6, 1975, denying the motion of defendants, pursuant to Fed.R.Civ.P. 60(b)(6), to vacate a summary judgment against them in favor of the United States in an action arising out of an alleged tax deficiency. We affirm.

## I. FACTS

The tax deficiency imposed here arose out of Salvatore Cirami's operation in the early 1960's of Air Freight Haulage Co., which was engaged in the business of supplying truck transportation service. Since Cirami operated the company as a sole proprietorship, the income and expenses of the business were reflected on his personal federal income tax returns, which he filed jointly with his then-wife. The returns for the years 1961–1963 inclusive were audited by the Internal Revenue Service, resulting in wholesale disallowances of claimed business expenses and deductions which allegedly were not substantiated.[1] Accordingly, on September 14, 1966 a statutory notice of deficiency reflecting the disallowances was sent by IRS to the Ciramis; the total tax deficiency assessed was $153,087.34, plus a penalty of $19,578.91. One week later Cirami's accountant, Louis N. DeStefano, wrote to the IRS's district director for New York protesting the IRS's determination of deficiency and requesting "an informal conference and/or a re-audit." In response DeStefano received an IRS form letter acknowledging receipt of his communication, and advising him that it would be given "proper consideration" and that he would be "advised as to the action taken at a later date." Appellants now claim that, in reliance upon this response, no petition was ever filed by them in the Tax Court, and apparently no further communication ensued. On March 3, 1967 a formal assessment was made by IRS against the appellants in the amounts set forth in the statutory notice of deficiency, plus interest.

On February 28, 1973, almost six years later, IRS instituted an action in the Eastern District of New York against appellants and their son James, in order to reduce the stated tax assessments to judgment, to set aside allegedly fraudulent conveyances of property made by Salvatore Cirami to his son, and for other ancillary relief. To defend the action the Ciramis retained the services of Peter R. Newman, Esq., of Syosset, New York, who was recommended by the Ciramis' accountant DeStefano and who himself (according to the government's attorney at oral argument of the appeal) was a former IRS agent. On March 20 Newman filed an answer on behalf of his clients; essentially the answer consisted of a general denial and a counterclaim for taxes "illegally and erroneously collected."[2]

On December 28, 1973, the government moved for partial summary judgment against the Ciramis, pursuant to Fed.R. Civ.P. 56;[3] the motion was supported by an affidavit from the IRS district director, setting forth the amounts assessed, and by a memorandum of law which attempted to demonstrate that the defendants' general denial contained in their answer did not overcome the presumptive correctness of the assessments made against them. No opposition to the motion was ever filed on defendants' behalf. As a result, Judge Bruchhausen granted partial summary judgment "in all respects" by order dated March 18, 1974; the order also stated that "[c]opies hereof are being forwarded to the attorneys for the respective parties." Judgment was entered on June 12, 1974 against Salvatore and Margaret Cirami in the total amount of $270,792.43, plus interest from the date of entry. The judgment itself again noted that no opposition was filed to the government's motion for partial summary judgment. Notice of entry of judgment was filed on July 5,

---

1. For example, the IRS disallowed all major trucking expenses for each of the years involved, and also disallowed in their entireties the claimed expenses for salary, insurance, and rent for 1963.

2. This counterclaim was dismissed by Judge Bruchhausen on October 2, 1973 on the government's motion. Appellants resisted the motion to dismiss their counterclaim by filing both a "brief in support of counterclaim" submitted

by Newman, and an affidavit in opposition to the motion to dismiss the counterclaim executed by Salvatore Cirami.

3. The motion was for partial judgment in that it only sought to reduce to judgment the tax assessments against the senior Ciramis, and did not seek to set aside the alleged fraudulent conveyances or to obtain judgment against the Ciramis' son.

Thereafter, appellants retained new counsel. According to his brief on this appeal, Salvatore Cirami substituted Carl Mione, Esq. as his counsel on August 28, 1974.[4] A notice of appearance for Margaret Cirami was filed on December 23, 1974 by the firm of Wagman, Cannon & Musoff; however, according to the government, that firm advised IRS on October 4, 1974 that it was representing Margaret Cirami.

On May 1, 1975, appellants, through their new attorneys, filed a motion pursuant to Fed.R.Civ.P. 60(b)(6) to vacate the partial summary judgment entered for the government.[5] In support of the motion, on July 1 appellants introduced records and papers of Air Freight Haulage Co., plus affidavits from two accountants (Bernard Zipern and Seymour Unterberg) who had audited the company's books during the years in question. These affidavits sought to explain some of the company's record-keeping procedures, and in one of them, accountant Unterberg said that his findings "indicate that, with minor exception, all of the business deductions claimed by Salvatore and Margaret Cirami on their joint 1961, 1962 and 1963 income tax returns are fully substantiated by the available books and records of Air Freight Haulage Co." In addition the notice of motion itself was accompanied by an affidavit of Salvatore Cirami, dated April 28, 1975, in which Cirami claimed that "[i]t was not until my present attorney, Mr. Mione took possession of Mr. Newman's files in this matter did I know that the United States had taken summary judgment against my former wife Margaret and myself."

The government filed memoranda in opposition to appellants' motion to vacate the

earlier judgment. On October 6, 1975, Judge Bruchhausen entered an order denying the motion, essentially on the grounds that appellants failed to meet the requirement of extraordinary circumstances necessary for relief under Rule 60(b)(6), and that appellants did not make their motion within a reasonable time, as is also required by the Rule.[6] This appeal followed.

## II. DISCUSSION

■ Rule 60(b) of the Federal Rules of Civil Procedure permits a party to be relieved from a final judgment basically for the following reasons (corresponding to the subdivisions of the Rule): (1) "mistake, inadvertence, surprise, or excusable neglect"; (2) "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)"; (3) "fraud . . . misrepresentation, or other misconduct of an adverse party;" (4) "the judgment is void"; (5) "the judgment has been satisfied, released, or discharged . . ." or (6) "any other reason justifying relief from the operation of the judgment." The motion made below was pursuant to subdivision 6 of Rule 60(b) which while general in terms is properly applicable only upon a showing of "exceptional circumstances." *Rinieri v. News Syndicate Co.*, 385 F.2d 818, 822 (2d Cir. 1967); *Ackermann v. United States*, 340 U.S. 193, 202, 71 S.Ct. 209, 213, 95 L.Ed. 207, 212 (1950).

The motion made below was based upon a three-page affidavit of Salvatore Cirami, sworn to on April 28, 1975, which in abbreviated form acknowledges that he operated the business described in the calendar years

4. It appears, however, that Cirami and Mione were acquainted before that, since on June 6, 1973 Mione notarized Cirami's affidavit in opposition to the government's motion to dismiss the Ciramis' counterclaim, note 2 supra.

5. While the notice of motion was dated April 25, 1975, it was not filed with the district court until May 1.

6. The opinion below also took notice of the earlier conviction of Salvatore and James Cirami for attempted evasion of social security and

unemployment taxes and for aiding in the preparation of false returns. In that action, another trucking corporation run by the Ciramis (Air Package Distribution Service Ltd.) sought to classify its truck drivers not as employees but rather as independent contractors, so as to avoid paying social security and unemployment taxes. The convictions were affirmed by this court, *United States v. Cirami*, 2 Cir., 510 F.2d 69, and certiorari was denied, 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 451 (1975).

1961, 1962 and 1963; that his business books and records were maintained by an accountant; that the receipts and business expenses of his business were reflected in his joint income tax return filed with the Internal Revenue Service and prepared by his accountant; that, on September 14, 1966 he was forwarded a letter from the District Director of Internal Revenue which he has recently been advised, was a statutory notice of deficiency; that he gave the notice to his accountant DeStefano who advised that he would take appropriate action; that to the best of his knowledge and recollection, a Revenue Officer, at an unspecified date, advised that the assessments had been made; and that some payments had been made on the assessments, under protest.

The last four paragraphs of the Cirami affidavit which are here pertinent follow:

9. When the summons was served upon me in the instant action, I went to Mr. DeStefano who referred me to Peter Newman, Esq.

10. Mr. Newman agreed to represent my former wife, Margaret, my son, James and myself in this proceeding.

11. Mr. Newman and I met on some three occasions including the initial conference at which time we only discussed personal background information.

12. It was not until my present attorney, Mr. Mione took possession of Mr. Newman's files in this matter did I know that the United States had taken summary judgment against my former wife Margaret and myself.

The exceptional circumstances relied upon by the appellants here is the fact that their then-counsel, Newman, permitted the United States to take summary judgment for more than $270,000 by default for reasons described by appellants as "unknown." We have been provided with no affidavit of Newman which would cast any light on the circumstances of his failure to contest the government's motion for partial summary judgment. Neither have we received any affidavits from present counsel of appellants which would indicate what efforts, if any, have been made to elicit Newman's

testimony, either voluntarily or under subpoena. We have only been told on oral argument that Newman is not speaking to his former clients. The affidavit of Salvatore Cirami is hardly illuminating. In addition to the vagueness already seen there is no indication that any efforts were made by Cirami or his wife to ascertain at the time the status of the matter or the activity, if any, of his then-counsel. Cirami is an experienced businessman and no stranger to the activities of the Internal Revenue Service. On the record, the court below found that the taxpayers had not shown the "exceptional circumstances" necessary for the granting of a Rule 60(b)(6) motion, which is addressed to the discretion of the district court judge. *Schwarz v. United States,* 384 F.2d 833, 835 (2d Cir. 1967); 7 J. Moore, Federal Practice ¶ 60.27(1), at 351–52 (2d ed. 1975). We cannot find that the court below abused its discretion in denying the relief requested. On the record before us we are totally uninformed of the reasons for the failure of the appellants' former counsel to contest the motion for summary judgment or whether the failure was deliberate or inadvertent.

The question of the extent to which the error of counsel may constitute a basis for Rule 60(b) relief is somewhat vexing. Normally, the motion would be made pursuant to Rule 60(b)(1) on the theory that counsel's error constitutes a mistake or excusable neglect. This Circuit has rather consistently refused to relieve a client of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or of the rules of the court, or his inability to efficiently manage his caseload. *United States v. Erdoss,* 440 F.2d 1221 (2d Cir.), cert. denied, 404 U.S. 849, 92 S.Ct. 83, 30 L.Ed.2d 88 (1971); *Schwarz v. United States, supra; Dal International Trading Co. v. Sword Line, Inc.,* 286 F.2d 523 (2d Cir. 1961); *Benton v. Vinson, Elkins, Weems & Searls,* 255 F.2d 299 (2d Cir.), cert. denied, 358 U.S. 885, 79 S.Ct. 123, 3 L.Ed.2d 113 (1958). The same rule can be found outside this Circuit as well, e. g.,

*Cline v. Hoogland,* 518 F.2d 776, 778 (8th Cir. 1975) (collecting Eighth Circuit cases) ("Ignorance or carelessness of an attorney is generally not cognizable under Fed.R. Civ.P. 60(b)."). This approach is supported by the opinion of Mr. Justice Harlan for the Court in *Link v. Wabash R.R.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734, 740 (1962) where he commented:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." (Citation omitted).

While *Link* was not a Rule 60 case, 370 U.S. at 635–36, 82 S.Ct. at 1391, 8 L.Ed.2d at 741, its reasoning has been found applicable to that Rule by Professor Moore, who has commented extensively on the issue, 7 J. Moore, Federal Practice ¶ 60.27[2] at 365–72.

At the same time there is authority for the proposition that where the conduct of counsel is grossly negligent, there may be a basis for relief under Rule 60(b)(6). The leading case for this proposition is *L. P. Steuart, Inc. v. Matthews,* 117 U.S.App.D.C. 279, 329 F.2d 234, cert. denied, 379 U.S. 824, 85 S.Ct. 50, 13 L.Ed.2d 35 (1964). Professor Moore finds *Steuart* "logically irreconcilable" with *Link v. Wabash R.R.* and our opinion in *Schwarz v. United States, supra.* 7 J. Moore, *supra* at 369.[7]

The appellants here rely upon subdivision 6 of Rule 60(b) and not subdivision 1. Since subdivision 1 requires that the motion be made within one year after the judgment and a subdivision 6 motion must be made only "within a reasonable time," the distinction becomes crucial in some cases. Here, the motion was made within a year so that the choice of appellant was obviously not dictated by time considerations. The question then becomes: should we follow *Steuart* and hold that gross negligence of counsel warrants the relief sought. Although we note that Judge Smith in *Schwarz* found "no case of reversal by an appellate court of a District Court's exercise of discretion in circumstances such as these" (i. e., neglect of counsel), 384 F.2d at 835, and despite Professor Moore's apparent approval of what he considers to be the rule of this Circuit, we cannot overlook our holding in *Vindigni v. Meyer,* 441 F.2d 376 (2d Cir. 1971) where we did reverse and remand an order of the district court which denied a Rule 60(b) motion to vacate an order of dismissal. An examination of the motion papers and briefs in that case fails to establish whether the motion was made under subdivision 1 or 6. The opinion notes that the motion was made under Rule 60(b) without further specification. In *Erdoss* we have squarely held just one week after *Vindigni* that "Rule 60(b)(1) and 60(b)(6) are mutually exclusive, so that any conduct which generally falls under the former cannot stand as a ground for relief under the latter. . . . Since the alleged ground for relief under Rule 60(b) here concerned mistake, only Rule 60(b)(1) is applicable." 440 F.2d at 1223 (citations omitted). By a parity of reasoning one would suppose that since here the basic ground of relief is neglect, the motion was properly under subdivision 1 and not 6.

We are loathe to rest on such technical grounds. Assuming arguendo that *Vindigni,* which preceded *Erdoss* by a week and which was not cited in the latter opinion, permits 60(b)(6) relief where gross attorney incompetence is revealed by the record, and even if this circuit were to follow *Steuart*

---

7. *Schwarz* itself simply distinguished *Steuart* on the grounds that the latter case involved a holding that the district court did not abuse its discretion in *granting* a motion to reinstate a suit, whereas in *Schwarz* (as well as in the instant case) the motion had been denied. 384 F.2d at 835.

—a course to which we are not now inclined—appellants must in any event fail. In *Vindigni* the plaintiff longshoreman had commenced a personal injury action in the district court and had retained his own counsel. Plaintiff failed to appear for a deposition and his complaint was ultimately dismissed on defendant's unopposed motion. The 60(b) motion denied by the district court was reversed here because "we have the unusual fact of the complete disappearance of plaintiff's attorney." Moreover, the plaintiff in his affidavit urged that he had "tried diligently to find" his attorney. The court noted in its decision that "we do not depart from the regular course of our decisions upholding discretionary orders of dismissal for failure to prosecute. . . . The facts here are readily distinguishable from the facts in those decisions." 441 F.2d at 378 (citations omitted). The case was remanded to determine in a full evidentiary hearing whether in fact plaintiff had neglected his suit. See also *Flaks v. Koegel*, 504 F.2d 702, 712 (2d Cir. 1974).

The case before us is clearly distinguishable. There is not the unusual circumstance of attorney disappearance, and there is no allegation of any effort to contact the former attorney to ascertain the status of the litigation at any point or even to provide the court below with any explanation for his failure to oppose the motion for summary judgment. *L. P. Steuart, Inc. v. Matthews, supra*, is equally inapposite. In that case former counsel's affidavit revealed that at the time of his default he had been beset by personal problems, including the death of his parents and the serious illness of his wife. Moreover, his client's affidavit noted that he had made numerous inquiries of his former counsel who had either refused to answer or had assured him that the case was proceeding and would soon be settled. Judge Edgerton found that Rule 60(b)(6) was broad enough to permit relief

when "personal problems of counsel cause him grossly to neglect a diligent client's case and mislead the client." 329 F.2d at 235.[8] In sum, even if gross negligence provides a basis for Rule 60(b)(6) relief, the record before us fails to establish any gross negligence or misleading of the appellants by counsel and is bereft of any indication of client diligence.

Ultimately, appellants' position here is reduced to an appeal to the conscience of the court based upon the nebulous doctrine that "equitable considerations" should essentially govern the application of Rule 60(b)(6). *Smith v. Jackson Tool & Die, Inc.*, 426 F.2d 5, 8 (5th Cir. 1970); *Menier v. United States*, 405 F.2d 245, 248 (5th Cir. 1968). Our court however has required the movant to show "exceptional circumstances," *Rinieri v. News Syndicate Co., supra*, or, as Judge Learned Hand indicated in *United States v. Karahalias*, 205 F.2d 331, 333 (2d Cir. 1953), "extreme hardship." The "equity" urged here is essentially that the appellants have been subjected to a substantial judgment which was erroneously entered. Appellants have urged vigorously that Cirami must have had properly deductible business expenses far in excess of that fixed by the government and finally determined by the judgment entered by default. The argument that their cause has merit is plausible but is not determinative. It is well established that an appeal from the denial of a Rule 60(b) motion "brings up only the denial of the motion and not the [merits of the underlying] judgment itself." *Wagner v. United States*, 316 F.2d 871, 872 (2d Cir. 1963). Accord, *Schwarz v. United States, supra*, 384 F.2d at 835; *Hodgson v. U. M. W.*, 153 U.S.App.D.C. 407, 473 F.2d 118, 124 n.28 (1972); 7 J. Moore, *supra*, ¶ 60.30[3], at 431 & n.8.

The reason for the rule is based in our view on sound judicial policy. There must be some end to litigation at some point.

---

**8.** In his dissent in *Steuart*, Judge Miller followed the reasoning of *Link v. Wabash R.R., supra*, and its holding that the client is bound by the acts and omissions of his attorney. He suggested that the proper remedy was a malpractice action by the client against his negligent attorney, 329 F.2d at 238. A similar suggestion was made by Judge Smith in *Schwarz v. United States, supra*, 384 F.2d at 835–36. We do not imply at all that such a remedy is feasible here in view of the record, or more accurately, lack of any record, before us.

The time to appeal the judgment below has long since expired and it cannot be enlarged by recourse to Rule 60(b). The movant must of course establish that his cause has merit but he must further come within the statutory scheme of Rule 60(b). Appellants here have utterly failed to establish any exceptional circumstances, nor has the Cirami affidavit created any questions of fact, which would require any further proceedings.

The government's contention that the Rule 60(b)(6) motion here was untimely was sustained below. However, since it was made within the one year limit imposed for motions under Rule 60(b)(1), (2), or (3), we would find that in fact it was timely made here under all the circumstances. In view of our position on the merits however this does not affect the result here.

Affirmed.