NEW YORK STATE HEALTH FACILI-
TIES ASSOCIATION, INC., a New York
not-for-profit membership Corporation,
suing on behalf of its member licensed
skilled proprietary nursing homes locat-
ed within the State of New York, Plain-
tiff,

v.

Hugh L. CAREY, Governor of the State of
New York, Robert P. Whalen, Commis-
sioner of Health of the State of New
York, the State Hospital Review and
Planning Council, a Council within the
Department of Health of the State of
New York, Steven Berger, Acting Com-
missioner of Social Services of the State
of New York and Peter C. Goldmark,
Director of the Budget of the State of
New York, Defendants.

No. 75 Civ. 3246.

United States District Court,
S. D. New York.

Aug. 15, 1977.

Lowell & Karassik, New York City, for plaintiff; Stanley H. Lowell, Richard L. Brenner, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; Paul S. Shemin, New York City, of counsel.

## OPINION

WARD, District Judge.

Defendants move for an order pursuant to Rule 60(b), Fed.R.Civ.P.,[1] vacating and setting aside the default judgment entered against them on April 20, 1976. For the reasons hereinafter stated, the motion is granted.

Plaintiff, New York State Health Facilities Association, Inc. ("the Association"), is a non-profit association of proprietary nursing homes in New York State. It commenced this action on July 2, 1975 and filed an amended complaint on December 3, 1975, seeking to challenge certain amendments to regulations of the New York State Department of Health, contained in 10 New York Code of Rules and Regulations ("N.Y.C.R.

R."), Part 86. The amendments were promulgated on April 25, 1975, effective as of March 6, 1975. Plaintiff contends that 10 N.Y.C.R.R. §§ 86.23(d), 86.24(e), 86.30(a), 86.30(b) and 86.32(b), relating to property cost reimbursement to nursing homes, violate Title XIX of the federal Social Security Act, 42 U.S.C. §§ 1396 *et seq.* ("Title XIX").

Title XIX authorizes a joint federal-state grant-in-aid program. Federal funds are made available to states which have submitted, and had approved by the Secretary of Health, Education and Welfare ("H.E.W."), state plans for medical assistance. These funds are distributed to the participating states which, in turn, transmit them to nursing homes and health-related facilities rendering services to eligible Medicaid recipients. The challenged regulations were in response to state findings that the prior regulations afforded excessive profits to Medicaid providers. In the past, nursing home operators were able to fully depreciate their facilities, after which they could sell the building to a new owner who would be entitled to reimbursement for the full cost of the facility, not the depreciated cost. The challenged regulations were intended to put an end to this practice. On the other hand, the Association views the new regulatory scheme as an unlawful taking of property.

Defendants failed to answer plaintiff's amended complaint. On March 15, 1976, plaintiffs filed an Application and Notice for Entry of Default Judgment, pursuant to Rule 55(b), Fed.R.Civ.P. Defendants again failed to respond and this Court granted the unopposed motion on March 29, 1976. Judgment by default was entered against defendants on April 20, 1976. It declared the controverted regulations to be violative of both federal and state law, as well as the United States and New York State Constitutions. Further, the judgment enjoined

---

1. Rule 60(b), Fed.R.Civ.P., provides in pertinent part:

*Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . (4) the judgment is void; . . . or (6) any other reason justifying relief from the operation of the judgment.

implementation of the challenged regulations. Finally, defendants were ordered to reimburse skilled proprietary nursing homes for property costs based upon the regulations in effect prior to March 6, 1975. The parties agree that reimbursement involves only the period from April 1, 1975 to December 31, 1975.[2]

■ The eleventh amendment to the United States Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The amendment does not literally apply to suits brought against a state by its own citizens; however, for nearly a century, the Supreme Court has construed it to bar such suits. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Employees v. Department of Public Health and Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

The default judgment ordered both retroactive and prospective relief. The initial question presented is whether the eleventh amendment deprived this Court of jurisdiction to order the retroactive monetary payments, covering the period April through December 1975.

Though the State of New York is not named as a party to this action, the individual defendants are sued in their official capacities. As recently as May 27, 1977, the Second Circuit Court of Appeals has stated:

While there are many factors which must be considered in determining whether a state instrumentality can raise the bar of the Eleventh Amendment in a particular suit, the most significant is whether any liability against the agency must be paid from public funds in the state treasury. *Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 38 (2d Cir., 1977).

This approach is in accord with the Supreme Court rule that the eleventh amendment bars a suit to impose a liability which must be paid from public funds in the state treasury. *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The default judgment herein orders the defendants to "recompute and pay over the real property reimbursement due under the Medicaid Program beginning March 6, 1975 without regard to the [challenged amendments]." As defendants correctly contend, this retroactive relief will, as a practical matter, require New York to make payments to the Association from public funds in the state treasury. Thus, the State of New York is the real party in interest.

"It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." THE FEDERALIST No. 81, at 508 (H. Lodge ed. 1888) (A. Hamilton). Of course, a state may waive its immunity. However,

[i]n deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909). *Edelman v. Jordan*, 415 U.S. 651, 763, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974).

On December 31, 1975, Congress amended Title XIX. The new law, which was to become effective on January 1, 1976, gave participating states the choice of either including in their state plans a provision consenting to certain suits brought with respect to payment for in-patient hospital services, or facing a 10% reduction in their federal funding. P.L. 94-182, § 111, 89 Stat. 1054, codified at 42 U.S.C. §§ 1396a(g) and 1396b(*l*). Consequently, on March 30,

---

**2.** After conferring with the parties, Magistrate Jacobs noted in his report that April 1, 1975 was the starting point because no state regulation could be retroactive to a date prior to the quarter in which it was promulgated.

1976, New York executed a waiver of its eleventh amendment immunity. Thereafter, on October 18, 1976, Congress repealed the waiver requirement, by enacting P.L. 94–552, 90 Stat. 2540. The repealer was made retroactive to January 1, 1976, the day the repealed statute went into effect. Pursuant to directions from H.E.W., New York withdrew its waiver of immunity.

Irrespective of whether the term "hospital services" as used in the amendment embraces "nursing homes," legislative history reveals that Congress does not intend mere participation in the federal Medicaid Program to subject a state to suit in the federal courts.

> Section 1902(g) [42 U.S.C. § 1396a(g) (1975)], which requires that States waive their constitutional immunity to suits for money judgments in federal court, was designed to afford providers access to a judicial remedy for purposes of enforcing their legal rights. However, upon reconsideration of this matter, the Committee is unconvinced as is the House of Representatives of the desirability of compelling States to waive their constitutional immunity to suit or of the feasibility of assessing monetary sanctions against States failing to do so in a time of economic stringency at all governmental levels. For this reason, the Committee strongly recommends that the Senate act expeditiously in repealing this well-intentioned but, in retrospect, inappropriate legislation. S.Rep.No. 1240, 94th Cong., 2d Sess. 3–4 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5648, 5650.

The repealed statute, requiring that states consent to be sued, appeared to be good law at the time of the entry of the default judgment. The Association urges that if the repealer statute enables the state to revive its eleventh amendment immunity claim, plaintiffs will be deprived of property (the April money judgment) without due process, in violation of the fifth amendment. The Court disagrees. Defendants' alleged wrongdoing, and plaintiff's filing of its Amended Complaint, occurred prior to the time that the repealed statute was to become effective (January 1, 1976). Had the state filed a timely answer, it could have included an assertion of its eleventh amendment immunity. No monetary relief would have been obtainable by the Association at the time of trial.

Plaintiff is not being deprived of property since the Court was without jurisdiction to award the property, in the first instance. The judgment was a legal nullity. Since nothing was given, nothing is being taken away. *See also Hospital Association of New York State, Inc. v. Toia*, 435 F.Supp. 819 (S.D.N.Y., filed Aug. 4, 1977).[3]

▬ The Association asserts that in the past, New York has submitted itself to the jurisdiction of the federal courts in matters bearing upon state costs under Title XIX (citing *Catholic Medical Center v. Rockefeller*, 305 F.Supp. 1256, 1268 (E.D.N.Y.1969), *aff'd per curiam*, 430 F.2d 1297 (2d Cir. 1970), *appeal dismissed*, 400 U.S. 931, 91 S.Ct. 246, 27 L.Ed.2d 262 (1970); and *Maxwell v. Wyman*, 458 F.2d 1146 (2d Cir. 1972).). The answer to this argument is simply that, in the cases cited, the eleventh amendment was not raised as a defense by the state. In addition, these cases were decided prior to *Rothstein v. Wyman*, 467 F.2d 226 (2d Cir. 1972), *cert. denied*, 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973), which embodied the view ultimately adopted by the Supreme Court in *Edelman*, *supra*. In light of the eleventh amendment, a federal court's remedial power is necessarily limited to prospective injunctive re-

---

**3.** In *Hospital Association of New York State, Inc. v. Toia*, on remand from the Court of Appeals, Judge Lasker was faced with determining whether the repealer statute, enacted after entry of judgment in the district court but prior to a decision on appeal, affected the validity of that judgment, and if so whether the statute was constitutional. Judge Lasker decided that the repealer statute required vacatur of the district court judgment and dismissal of claims for a monetary award against the state defendants. The Court further determined that the plaintiffs had no vested right in the judgment until it had become unreviewable and that the repealer statute neither repudiated nor barred enforcement of a substantive right. Accordingly, the repealer statute was constitutional.

lief. In summary, it may not make a retroactive monetary award which necessitates the payment of funds from the state treasury. *Id.* 415 U.S. at 663–671, 94 S.Ct. 1347.

The Court takes judicial notice of defendants' egregious delay, both before and after the default judgment was entered. Prior to the entry of judgment, plaintiff made numerous attempts to advise the Assistant Attorney General of defendants' default. In response to plaintiff's repeated requests for an overdue answer, defendants requested and obtained additional extensions of time. When still no response was forthcoming, plaintiff served the Attorney General with an Application and Notice for Entry of a Default Judgment. Defendants still did not appear, respond or in any way contest the facts alleged in support of this motion. On April 21, 1976, immediately following entry of the default judgment, plaintiff sent a copy of the judgment to State Health Commissioner Whalen and the other defendants in hopes of securing compliance with the Court order and judgment. There was no reply from any of the defendants; and not a single word of response came from the Attorney General's office. Finally, on August 5, 1976, over seven months after their answer was due and approximately three and one-half months after they were requested to carry out the order and judgment of this Court, defendants filed their present motion. This Court appreciates that the New York State Attorney General's Office is burdened with a heavy workload. However, this does not excuse its neglect of the matter at hand, which has worked a great disservice not only upon plaintiff, but also upon the State of New York.

■ Yet, the Association errs in its belief that it is too late, at this point in the proceedings, for the state to raise the eleventh amendment as a defense. Because the defense is in the nature of a jurisdictional bar, *Edelman, supra* at 678, 94 S.Ct. 1347, it may be considered by this Court, though raised for the first time at this stage of the litigation.

The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue arising under this Amendment in this case even though urged for the first time in this Court. *Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 467, 65 S.Ct. 347, 352, 89 L.Ed. 389 (1945).

■ Though Rule 60(b), Fed.R.Civ.P., ordinarily requires a showing of "excusable neglect," defendants need not show a meritorious defense since they are attacking what they assert to be a void judgment. 7 J. Moore, *Federal Practice* ¶ 60.25[2], at 301 (2d ed. 1975). Rule 60(b) places no time limit on an attack upon a void judgment.

In addition to the retroactive monetary award, the default judgment ordered related prospective relief for the Association. The Court permanently enjoined implementation of the disputed amendments unless, and until, approved by the Commissioner of Social Services of the United States Department of Health, Education and Welfare or the Secretary of H.E.W.

■ Such relief, directed toward the future (beyond December 31, 1975), is not barred by the eleventh amendment. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Edelman, supra.* As recently as June 27, 1977, the Supreme Court reaffirmed this prospective-compliance exception. *Milliken v. Bradley,* —— U.S. ——, 97 S.Ct. 2749, 53 L.Ed.2d 745, (1977). A federal court may enjoin state officials "to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." *Id.* at ——, 97 S.Ct. at 2762.

■ However, when a party, pursuant to Rule 60(b), Fed.R.Civ.P., is seeking to vacate and set aside a judgment, the trial judge possesses broad discretion. The Court's decision is based upon a balancing of two principles: the finality of judgments, and the effectuation of justice. 7 J. Moore, *Federal Practice* ¶ 60.27[1], at 340 (2d ed. 1975). While the Court is not per-

suaded that defendants' conduct amounted to mistake or excusable neglect, Rule 60(b)(1), Fed.R.Civ.P., the words of Justice Black are instructive:

> In simple English, the language of the "other reason" clause [Rule 60(b)(6)], for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice. *Klapprott v. United States*, 335 U.S. 601, 614–615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949).

The Court also notes that the only time limit upon relief under Rule 60(b)(6) is one of "reasonable time." In any event, defendants' motion was made within one year of the entry of judgment.

As has already been discussed, the real party in interest here is the State of New York. The citizens of New York had only the remotest control over the conduct of this case, through their civil servants. The Court believes it would be unfair to subject New York taxpayers to the added expense occasioned by this judgment, solely because of the neglect of their attorney.

The Court is not unmindful of *Aberson v. Glassman*, 70 F.R.D. 683 (S.D.N.Y.1976), and *United States v. Cirami*, 535 F.2d 736 (2d Cir. 1976). In *Cirami*, the Second Circuit Court of Appeals stated:

> This Circuit has rather consistently refused to relieve a client of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or of the rules of the court, or his inability to efficiently manage his caseload. *Id.* at 739 (citations omitted).

However, the Court believes this case is distinguishable on the critical fact that defendants herein are state officials represented by attorneys in the employ of the state. This is not a case where a private litigant had the opportunity to retain new counsel, upon his dissatisfaction with the manner in which he was being represented.

In addition to the "extreme hardship" of the judgment (*United States v. Karahalias*, 205 F.2d 331, 333 (2d Cir. 1953)), the Court notes that the state's contentions on the merits may not be disposed of as lacking in substance. It would appear that there is a serious question of law as to whether defendants were required to obtain approval from H.E.W. prior to implementation of the controverted regulations. There may well be a valid distinction between the statutory requirements relating to original state plans and amendments to state plans, as well as between "hospital services" and "nursing homes." The Court reserves its decision on these issues until the parties have had an opportunity to more fully present their arguments.

Accordingly, defendants' motion to vacate and set aside the default judgment is granted.

■ It is the intention of the Court in vacating the portion of the default judgment relating to plaintiff's claim for prospective relief that neither side will be precluded from presenting any argument on the merits of that claim. However, in the event plaintiff ultimately prevails on that claim, prospectivity will be measured from the date of the original judgment, April 20, 1976. Defendants will not be prejudiced by having to comply with a judgment on the merits which corresponds to the original default judgment which they would have had to satisfy but for this decision. On the other hand, if prospectivity is not determined by reference to the date of the original judgment, then plaintiff will be unfairly prejudiced by this Court's decision to reopen the default. Moreover, aside from preventing unfair prejudice to plaintiff and a windfall to defendants, there is a broader policy reason to support this result. If the Court were to allow the defendants to benefit from their unconscionable delay and neglect, there would be no incentive for them to litigate diligently. Since the purpose of reopening the default is to prevent one miscarriage of justice, not to cause another, prospectivity will be measured from the date of the original judgment, April 20, 1976.

Accordingly, the judgment is vacated and defendants are directed to serve and file an answer or appropriate motion within 20 days of the date of this decision. Pursuant to an agreement between the parties, defendants are directed to reimburse the Association for its reasonable attorney's fees.

It is so ordered.