SONY CORPORATION and Sony Corporation of America, Plaintiffs,

v.

S.W.I. TRADING, INC., Defendant.

No. 81 Civ. 3639 (DNE).

United States District Court, S.D. New York.

Feb. 8, 1985.

Eslinger & Pelton, P.C., New York City (Ned W. Branthover, New York City, of counsel), for plaintiffs.

Sukenik, Segal & Graff, P.C., New York City (David C. Segal and June Diamant, New York City, of counsel), for defendant and for nonparty June Einsidler.

## OPINION AND ORDER

EDELSTEIN, District Judge:

This action was commenced on June 11, 1981 by Sony Corporation and Sony Corporation of America ("plaintiffs") against S.W.I. Trading, Inc. ("SWI"), for trademark infringement and unfair competition, pursuant to 15 U.S.C. § 1125(a) and Section 368-d of the New York General Business Law. The complaint alleges that defendant "has imported, manufactured and/or sold and is distributing, selling and offering for sale audio tape cassettes which are piratical and counterfeit copies of plaintiffs' cassettes." Complaint at ¶ 18. In March of 1982, plaintiffs served defendant with a request for documents, and defendant did not respond. On September 24, 1982, this court ordered defendant to produce the documents and defendant did not comply with the order. On March 17, 1983, the court entered a default against SWI and ordered that an inquest be held to determine damages. Following the inquest, and based upon the Report and Recommendation of Magistrate Nina Gershon, dated June 13, 1984 ("Magistrate's Report"), the court, on June 28, 1984, entered a Final Judgment, awarding plaintiffs $389,217.36 in damages and issuing a permanent injunction against SWI.

Sometime after this action was commenced, SWI vacated its offices. After obtaining the default judgment, plaintiffs commenced an investigation to determine the location of SWI and Joseph Einsidler, ("Einsidler") the President and sole shareholder of SWI. Pursuant to this investigation, plaintiffs discovered that Einsidler had started a new corporation, Juno Export Corporation ("Juno Export") in New York City. According to its certificate of incorporation, Juno Export was incorporated on

July 9, 1981, about one month after this action was commenced. Under these circumstances, plaintiffs suspected that Einsidler had incorporated Juno Export in order to transfer money to it from SWI and avoid a money judgment.

In August of 1984, plaintiffs served subpoenas duces tecum, pursuant to N.Y.C.P.L.R. § 5224(a)(1) and (2), on Einsidler, SWI and Juno Export, in order to locate the assets held by the judgment-debtor, SWI. Plaintiffs also served SWI with an information subpoena, pursuant to N.Y.C.P.L.R. § 5224(a)(3), together with a Notice of Judgment Debtor, pursuant to N.Y.C.P.L.R. § 5222(d). By letter dated September 26, 1984, counsel for SWI informed plaintiffs that his client would not comply with the subpoenas because "these documents were improperly issued in violation of the requirements of CPLR, Article 54, relating to the enforcement of foreign/federal judgments, and are therefore of no legal force and effect." Exhibit 9 to Plaintiffs' Order to Show Cause to Adjudge SWI, Einsidler and Juno Export in Contempt ("Plaintiffs' Order to Show Cause").[1]

On October 10, 1984, plaintiffs obtained an order requiring SWI, Einsidler and Juno Export to show cause why the court should not hold them in contempt for failure to comply with the subpoenas. A hearing was held on October 16, 1984. During this hearing, the court ordered that Einsidler appear for a deposition on behalf of SWI on October 23, 1984 at 9:00 a.m. in plaintiffs' attorney's office. The deposition was ordered to allow plaintiffs to discover facts to aid in the enforcement of their money judgment against SWI, which is now defunct. On October 30, 1984, defendant moved to vacate the default judgment.

On November 5, 1984, based on information obtained during Einsidler's October 23, 1984 deposition, plaintiffs served his wife, June Einsidler, with a subpoena duces tecum, pursuant to Fed.R.Civ.P. 45(d)(1).

The subpoena required Mrs. Einsidler to produce the following documents:

1. All checking account statements and cancelled checks for any checking account for June Einsidler and/or Joe Einsidler from January 1, 1976 to the present.

2. All documents showing the transfer of assets, money or property between Einsidler, SWI, Juno Export and June Einsidler from January 1, 1981 to the present.

3. All documents which refer or relate to any communications between June Einsidler and any other persons concerning this lawsuit or plaintiffs' attempts to enforce their judgment against SWI.

On November 20, 1984, SWI moved, pursuant to Fed.R.Civ.P. 45(b) to quash the subpoena or, alternatively, to modify the subpoena.

To summarize, there are three motions presently before the court: (1) defendant SWI's motion to vacate the default; (2) plaintiffs' motion to hold Einsidler, SWI and Juno Export in contempt; and (3) defendant SWI's motion to quash the subpoena duces tecum served on June Einsidler. *The Motion to Vacate the Default.*

Defendants contend that in obtaining the default, plaintiffs failed to comply with Fed.R.Civ.P. 55(b)(2) applicable to the entry of default. Rule 55(b)(2) provides, *inter alia,* that if the defaulting party has appeared in the action, it shall be served with written notice of the application for judgment at least three days prior to the hearing on the application. Defendant contends that because SWI was not provided with sufficient notice, the default judgment is void and therefore must be vacated pursuant to Fed.R.Civ.P. 60(b)(4).

This contention is rejected. Plaintiffs fully complied with the requirements of Rule 55(b)(2). On February 28, 1983, plain-

---

1. Plaintiffs' counsel received a call from David C. Segal, defendant's present attorney, on September 12, 1984, during which Mr. Segal stated that he had been retained by Einsidler with regard to the subpoenas. Affidavit of Ned W. Branthover in Support of Plaintiffs' Order to Show Cause at 3. Mr. Segal was not retained by defendant during the earlier default proceedings before this court.

tiffs served on defendant "Plaintiffs' Motion for the Entry of Judgment by Default Against Defendant SWI Trading, Inc." Exhibit 3 to Declaration of Ned W. Branthover in Response to Defendant's Motion to Vacate the Default ("Branthover Declaration I"). The court entered default on March 17, 1983, approximately three weeks after the notice was served. Moreover, on March 29, 1983, plaintiffs served on defendant the Notice of Judgment by Default. Exhibit 4 to Branthover Declaration I.

■ Defendant concedes that such notice was made to Paulette M. Owens, SWI's attorney of record at the time. Defendant's Memorandum of Law in Support of Motion to Vacate Default at 3. Moreover, Einsidler concedes that Ms. Owens had informed him that the motion was made. Affidavit of Joseph Einsidler at ¶ 12 ("Einsidler Affidavit"). Defendant, however, contends that any notice sent to Ms. Owens was not sufficient because plaintiffs' attorney had been notified in writing by Ms. Owens that she no longer represented SWI. This contention is baseless. Until Ms. Owens properly withdrew from the case, plaintiffs acted properly in directing notice of pending motions and proceedings to her. Ms. Owen's letter to plaintiffs' attorney is not sufficient to constitute a withdrawal.[2] Rule 3(c) of the General Rules of the Southern District of New York provides that "an attorney who has appeared of record may be relieved or displaced only by order of the court and may not withdraw from a case without leave of court granted by order." Ms. Owens, at no point moved for withdrawal and no order relieving her issued from this court. Plaintiffs' notice to Ms. Owens was sufficient under the notice requirements of Rule 55(b)(2).

■ Plaintiffs also sent notice to the corporate offices of SWI, although these notices were returned "not forwardable." As noted by Ms. Owens in her letter to plaintiff dated September 28, 1982,[3] and by Magistrate Gershon in footnote 1 of her Report, Einsidler "disappeared" soon after this action was commenced, and SWI vacated its offices without leaving a forwarding address. Until such time as Ms. Owens could either locate Einsidler or obtain an order relieving her, it was her duty to represent Einsidler's interests in this case. That Ms. Owens neglected her duty is not grounds for vacating the default, because "there is no allegation of any effort [by Einsidler] to contact [Ms. Owens] to ascertain the status of the litigation at any point." *United States v. Cirami*, 535 F.2d 736, 741 (2d Cir.1976).

Defendant also contends that the default should be vacated pursuant to Fed.R.Civ.P. 60(b)(1), based on defendant's mistake and inadvertence. Einsidler was deposed by plaintiffs on May 18 and 21, 1981, prior to the commencement of this action, pursuant to subpoena in another action, *Sony Corporation and Sony Corporation of America v. Kent Import Export Co., Inc.*, 81 Civ. 1636 (S.D.N.Y.). Einsidler contends that during these depositions he was misled by plaintiffs into believing that, in the event plaintiffs decided to sue him for counterfeiting Sony tapes, they would seek only injunctive relief, not monetary damages. This contention is also rejected.

■ In deciding whether to vacate a default under Rule 60(b)(1) based on the defaulting party's assertion of mistake, the court will consider the following three factors: "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief [from default] is granted." *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir.1983). All doubts are to be resolved in favor of the party seeking relief from judgment to

---

**2.** By letter dated September 28, 1982, Ms. Owens informed plaintiffs that because she had been unable to locate Einsidler for "many weeks," she could not comply with the court's order compelling production of documents. Ms. Owens also stated in the letter that she "intend[s] to file a motion to withdraw from representation in the near future and will keep you [plaintiffs] advised of the same." Ms. Owens never filed such a motion.

**3.** *See supra* note 2.

facilitate resolution of disputes on their merits. *Jackson v. Beech*, 636 F.2d 831, 836 (D.C.Cir.1980). However, "when the adversary process has been halted because of an essentially unresponsive party," default judgment is appropriate to protect the non-defaulting party from "interminable delay and continued uncertainty as to his rights." *Id.* (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970) (per curiam)).

▮ The court finds that defendant's default was willful. By his own admission, Einsidler received the summons and complaint in this action in June of 1981, one month *after* plaintiffs purportedly assured him that they would not seek a money judgment. Einsidler Affidavit at ¶ 7. In paragraph 5 of their prayer for relief, plaintiffs seek "damages in an amount to be fixed by the court in its discretion as just, including punitive damages, as well as all of defendant's profits or gains of any kind resulting from defendant's willful infringement and acts of unfair competition." Complaint at 12. In paragraph 6 plaintiffs also seek attorneys' fees. During the course of the litigation, defendant was also served with: (1) plaintiffs' first request for production of documents; (2) plaintiffs' motion to compel production of documents; (3) order compelling defendants to produce documents; (4) motion for judgment by default; (5) notice of entry of judgment by default; and (6) notice of inquest. Assuming, *arguendo*, that at some point Einsidler believed that plaintiffs would not seek a money judgment, Einsidler knew or should

have known, based on plaintiffs' subsequent actions that plaintiffs had altered their litigation strategy. Einsidler could have protected himself and SWI at any point by entering into a stipulation and proposed order with the plaintiffs to discontinue the action for money damages. Instead, he simply ignored the proceedings before this court.

▮ Einsidler states that in 1984, he was "shocked" to learn that a money judgment of approximately $390,000.00 had been entered against SWI. Einsidler Affidavit at ¶ 14. Einsidler's "shock," however, did not inspire him to apply to this court for relief from judgment. SWI did not move to vacate the default until plaintiffs moved in October of 1984 for an order of contempt. The court finds that defendant has wilfully ignored the proceedings herein with knowledge, or, at best, with reckless disregard for the fact that it was subject to judgment for money damages.[4]

▮ Defendant has failed to state a meritorious defense. Einsidler contends that SWI "always maintained a good faith belief that it had purchased only authentic Sony brand cassettes." Einsidler Affidavit ¶ 6; Defendant's Memorandum in Support of Motion to Vacate at 8–9. This contention, however, is belied by Einsidler's deposition, held in May of 1981, during which Einsidler testified that he accepted delivery from Hong Kong of a shipment of cassettes and sold the cassettes after he had been notified by the United States Customs Department that the shipments from Hong Kong were counterfeit. Exhibits 6 and 8 to Branthover Declaration.[5] In view of plain-

---

**4.** Defendant has not alleged, pursuant to Fed.R. Civ.P. 60(b)(3), that any statements made by plaintiffs constitute "fraud" or "misrepresentation" sufficient to vacate the default. In any event, defendant has not sustained its burden under Rule 60(b)(3). Fraud or misrepresentation must be shown by clear and convincing evidence. *Nederlandsche Handel-Maatschappij, N.V. v. Jay Emm., Inc.*, 301 F.2d 114, 115 (2d Cir.1962). Plaintiffs' counsel was present during the May 1981 depositions of Einsidler. He states that "plaintiffs did not agree to forego their monetary damages against defendant nor did plaintiffs ever say or do anything which should have given Joe Einsidler that impres-

sion." Branthover Declaration I at ¶ 16. Einsidler's qualified and ambiguous assertion at paragraph 11 of his affidavit that plaintiffs assured him that they would "work with me," is insufficient to establish misrepresentation. Moreover, defendant has failed to produce any independent evidence, such as an affidavit from Ms. Owens, its former attorney. *See Standard Newspapers, Inc. v. King*, 375 F.2d 115, 116 (2d Cir.1967).

**5.** As noted at page 6 of the Magistrate's Report, "[d]efendant had on at least one prior occasion admitted dealing in falsely designated Sony products, in that instance calculators, and

tiffs' substantial evidence of Einsidler's unlawful intent, defendant's allegation that he was acting in "good faith" is insufficient to vacate the default.

Plaintiffs will be substantially prejudiced if the default is vacated. Because the injuries in this action occurred approximately four years ago, plaintiffs will likely encounter serious difficulties in obtaining evidence to prove their case. For example, plaintiffs have been informed that one of Einsidler's customers, to whom Einsidler sold the Sony cassettes, is deceased. Branthover Declaration I at ¶ 19. Moreover, the defendant has a history of failing to respond to discovery requests, even when ordered by the court. Vacating the default would provide defendant an additional opportunity for stonewalling and even for disposing of additional evidence of counterfeiting.

■ Defendant's final contention is that the money judgment obtained herein is based on findings that were mistakenly drawn. Under 15 U.S.C. § 1117, plaintiffs are entitled to recover defendant's profits, *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656 (2d Cir.1970), plaintiffs' damages, *Bowmar Instrument Corp. v. Continental Microsystems, Inc.*, 497 F.Supp. 947, 960 (S.D. N.Y.1980), plus plaintiffs' costs, *Durbin Brass Works, Inc. v. Schuler*, 532 F.Supp. 41, 43 (E.D.Mo.1982). In determining defendant's profits, "the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117.

The Magistrate held that due to "the defendant's default, no deductions have been shown, [and therefore] plaintiffs are entitled to recover the full sale price of the infringing goods." Magistrate's Report at 7 (citing *Deering, Milliken & Co. v. Gilbert*, 269 F.2d 191, 194 (2d Cir.1959)). Defendant contends, however, that the Magistrate ignored evidence of defendant's costs of approximately $280,000.00 in buying and importing the tapes, which would have re-

duced defendant's profits to approximately $106,000.00.

■ On page two of the Magistrate's Report, she states that "Notice of the inquest was mailed to defendant but the notice was returned as 'Moved—Not Forwardable.'" Thus, defendant's failure to receive notice of the inquest was a consequence of its failure to leave a forwarding address. The defendant cannot now complain that the Magistrate arrived at an incorrect determination of damages. Moreover, defendant cannot avail himself of the equitable considerations governing the application of Fed.R.Civ.P. 60(b)(6) because of his unclean hands, both in violating plaintiffs' trademark and in violating the settlement agreement with plaintiffs not to infringe the Sony trademark.

In *United States v. Cirami*, 535 F.2d 736 (2d Cir.1976), the defendant argued that the default entered against him for a tax deficiency should be vacated because defendant "must have had properly deductible business expenses far in excess of that fixed by the government and finally determined by the judgment entered by default." *Id.* at 741. The court refused to vacate the default on this ground, stating that "[t]here must be some end to litigation at some point." *Id.* The same principle applies to this case. Plaintiffs contend that "upon relying on defendant's failure to appear, [they] chose not to seek damages as a result of their loss of profits and damages to their trademark." Plaintiffs' Memorandum at 13. This court will not reopen this action for another mini-trial on the plaintiffs' damages. Plaintiffs have a right to see the end of this litigation.

■ In addition, Rule 60(b) motions must be brought within a "reasonable time." The final default judgment in this case was entered in June of 1984. Defendant did not move to vacate the default until October 30, 1984, after plaintiffs had brought Einsidler back into federal court by way of order to show cause. Yet, de-

---

agreed by means of a settlement to cease dealing in Sony calculators." *See also* Branthover Declaration I at ¶ 18; Exhibit 7 to Branthover

Declaration I. In view of Einsidler's past behavior, his contention of "good faith" is highly suspect.

fendant was aware of the default judgment by early September, at the latest. Under the circumstances, and based on Einsidler's previous conduct, the court finds that this motion was not brought within a reasonable time.

Accordingly, the motion to vacate the default is denied in all respects.

██ Plaintiffs have requested that defendant be taxed plaintiffs' costs and attorneys fees incurred in opposing the motion to vacate the default. Plaintiffs state that "[i]t is difficult to imagine a [stronger] case for a court denying a motion to vacate a default." Plaintiffs' Memorandum at 14. The court agrees. Counsel for defendant had no reasonable basis for believing that the motion is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." Fed.R.Civ.P. 11. *See Wells v. Oppenheimer & Co., Inc.,* 101 F.R.D. 358, 359 (S.D.N.Y.1984). Although a party seeking relief from judgment is entitled to have all doubts resolved in its favor, that party is not exempt from the requirement in Rule 11 that no motion is to be filed without careful consideration as to its basis in law and fact. Accordingly, the law firm of Sukenik, Segal & Graff is hereby taxed the attorneys' fees, expenses and costs that plaintiffs were required to expend in opposition to the motion to vacate the default. Plaintiffs' counsel are to provide this court with an application for reimbursement, supported by the appropriate documentation.

*Plaintiffs' Motion for Contempt.*

In plaintiffs' reply memorandum, filed November 19, 1984, plaintiffs state: "In view of the Court's order dated October 17, 1984 commanding [SWI, Einsidler and Juno Export] to appear for depositions, the plaintiffs do not seek additional sanctions against these persons at this time." Accordingly, and in view of the fact that SWI faces a substantial money judgment, the court, at this time, will not consider sanctions against Einsidler and his businesses for failure to comply with the subpoenas. It should be noted, however, that Einsidler and his counsel violated the fundamental principle that a subpoena cannot be ignored. *See* 5A Moore's Federal Practice ¶ 45.03[6], at 45–20 to 45–21. If Einsidler genuinely believed that the subpoenas issued under New York Civil Practice Law and Rules were defective, his remedy was to move to quash. While no sanctions will be imposed at this time, the court will make a *de novo* determination of plaintiffs' motion for contempt should Einsidler engage in any further dilatory tactics.

*Defendant's Motion to Quash the Subpoena Duces Tecum.*[6]

Defendant contends that the subpoena issued pursuant to Fed.R.Civ.P. 45(d)(1) should be quashed or modified for two reasons. First, it contends that the subpoena was improperly issued because plaintiffs did not serve a notice of deposition on Mrs. Einsidler before they obtained the subpoena. Rule 45(d)(1) provides:

> Proof of service of a notice to take a deposition ... constitutes a sufficient authorization for the issuance by the clerk of the district court ... of subpoenas for the persons named or described therein. Proof of service may be made by filing with the clerk ... a copy of the notice together with a statement of the date and manner of service and of the names of the persons served, certified by the person who made service....

The notice of deposition is postmarked November 6, 1984, one day after the subpoena was issued. Accordingly, defendant contends that the subpoena should be quashed. This contention is rejected.

██ In obtaining the subpoena, plaintiffs' attorney certified to the clerk that the notice of deposition was placed in the mail on November 5, 1984, the day the subpoena issued. As plaintiffs state on

---

**6.** Although the defendant SWI was not the party subpoenaed, it has standing to file a motion to quash the subpoena. *Taylor v. Litton Medical Prods., Inc.,* 19 Fed.Rules Serv.2d 1190 (D.Mass. 1975).

page 3 of their memorandum, "[t]he fact that the envelope is postmarked November 6, 1984 only shows that the Notice of Deposition was placed in a mailbox after the last pick up for [that] mailbox." *See* Notes of Advisory Committee on 1980 Amendments to Rules ("All that seems required is a simple certification on a copy of the notice to take a deposition that the notice has been served on every other party to the action."). Even if the subpoena was issued before the notice of deposition was served, that is not ground for quashing the subpoena. The purpose of Rule 45(d)(1) is to guarantee that when a subpoena duces tecum is issued to a nonparty, the party obtaining the subpoena intends to take the deposition of the nonparty. *See Jones v. Continental Cas. Co.,* 512 F.Supp. 1205, 1206 (E.D.Va.1981); 5A Moore's Federal Practice, ¶ 45.07 at 45–78. Defendant's attorney concedes that it received the notice of deposition on November 8, 1984. There is no dispute that plaintiffs intend to take the deposition of Mrs. Einsidler. Moreover, neither defendant nor Mrs. Einsidler has suffered any prejudice from plaintiffs' actions in obtaining the subpoena.

■ Defendant's second contention is that the list of documents set forth in the subpoena "is grossly unreasonable and overbroad." At the October 23, 1984 deposition of Einsidler, Einsidler testified, *inter alia,* that after Einsidler incorporated Juno Export in 1981, several weeks after this action was commenced, Einsidler, from December, 1981 to July, 1982, loaned Juno Export at least $288,627.79. Exhibit 2 to Declaration of Ned W. Branthover in Response to June Einsidler's Motion to Quash the Subpoena ("Branthover Declaration II"). Plaintiffs contend that this money came from defendant SWI's assets, because SWI's cancelled checks demonstrate that SWI made checks payable to Einsidler for $231,900.00 during the same period. Exhibit 3 to Branthover Declaration II. Einsidler also testified that during 1983, he closed out his personal joint checking account with his wife, June Einsidler, and that his wife opened up a new checking account in her name only. Exhibit 1 to Branthover Declaration II. Mrs. Einsidler had endorsed the checks for both SWI and for Juno Export.

Item one on the list of documents demanded is for "[a]ll checking account statements and cancelled checks for any checking account for June Einsidler and/or Joe Einsidler from January 1, 1976 to the present." Plaintiffs state that they need this information because Einsidler testified that he loaned SWI money to start the business. SWI's date of incorporation was December 27, 1977. Plaintiffs want to determine whether the documents demanded in item one show payments from Einsidler to SWI. They have been unable to obtain from Einsidler any documents to show that he personally loaned the money. In addition, because Einsidler no longer has a checking account of his own, plaintiffs want to determine whether Einsidler deposited the checks he received from SWI, totalling $231,900.00, into June Einsidler's checking account.

The demand in item one is not "unreasonable and oppressive." Plaintiffs need information dating back to 1976, because that is about the time that Einsidler purportedly loaned the money to SWI. Defendant contends that plaintiffs "must specify a transaction or occurrence and connect it to the private financial records sought from [Mrs. Einsidler], in order to validate their demand." Plaintiffs, however, cannot specify a transaction or occurrence because they do not know how many times funds changed hands between SWI, Einsidler and his wife. Moreover, although Mrs. Einsidler is not a party to this action, she is clearly involved and familiar with Einsidler's and SWI'S financial affairs. For example, during Einsidler's deposition of October 23, 1984, he stated that he does not write checks for himself; "[s]he [his wife] takes care of it." The court finds plaintiffs' demands in item one both relevant to the enforcement proceedings and reasonable.

Item two demands "[a]ll documents showing the transfer of assets, money or

property between Joe Einsidler, SWI, Juno Export and June Einsidler from January 1, 1981 to the present." Defendant objects to that portion of the demand relating to all transactions between Mr. and Mrs. Einsidler. Defendant contends that "[w]ithout specificity, plaintiffs' inquiry into the relationship between husband and wife over 3½ years—totally unrelated to any particular aspect of plaintiffs' action—is patently unreasonable and oppressive." Plaintiffs, however, have demonstrated that SWI transferred money to Einsidler and that Einsidler, sometime in 1983, closed his checking account. Accordingly, plaintiffs need to determine whether Einsidler deposited the money he received from SWI in Mrs. Einsidler's checking account. The demand in item two is appropriately limited to transactions between Einsidler and his wife after this action was instituted in 1981. In view of Einsidler's facially suspicious actions in: (1) terminating the operations of SWI and starting a new corporation only a few weeks after receiving the complaint in this action; and (2) closing out his personal checking account and using his wife's checking account for all his personal and business transactions, plaintiffs' demands are not unreasonable.

Item three demands "[a]ll documents which refer or relate to any communications between June Einsidler and any other persons concerning this lawsuit or plaintiffs' attempts to enforce their judgment against SWI." Defendant objects to this request on the ground that "it is so vague and sweeping that it is almost impossible to understand what type of documents plaintiffs are seeking." Plaintiffs reply merely by stating that "this document request is clear." As to this item, defendant's objection is sustained. The standard for production of documents from nonparties under Fed.R.Civ.P. 45(d) is similar to the standard applicable to parties under Fed.R.Civ.P. 34. *See* 5A Moore's Federal Practice ¶ 45.07[3], at 45–78. Under Rule 34, the party requesting the documents must "identify what documents it seeks to discover" and provide the court with some "basis for concluding that such documents exist." *Peck*

*v. United States*, 88 F.R.D. 65, 73 (S.D.N.Y.1980). Plaintiffs have done neither with respect to item three.

Item three demands documents relating to "communications" made by June Einsidler concerning this lawsuit. Plaintiffs will have the opportunity to depose Mrs. Einsidler and ask her about any communications she has had regarding this case. Defendant does not contest plaintiffs' right to depose Mrs. Einsidler. Affidavit of June Diamant in Support of June Einsidler's Motion to Quash or Modify Subpoena at ¶ 6. If after the deposition of Mrs. Einsidler plaintiffs are able to identify precisely the documents alluded to in item three, they may validly subpoena Mrs. Einsidler for those documents. At present, however, plaintiffs have not provided the court with any basis for sustaining the demand in item three.

### CONCLUSION

Defendant's motion to vacate the default is denied in all respects. Defendant is taxed plaintiffs' costs, including reasonable attorneys' fees expended in opposition to the motion. Plaintiffs are to file an application for their costs. The court defers consideration of plaintiffs' motion for contempt. Defendant's motion to quash or modify the subpoena issued pursuant to Fed.R.Civ.P. 45(d)(1) is denied in part and granted in part. The motion to quash or modify is denied with respect to items one and two. The motion to quash is granted with respect to item three.

SO ORDERED.