Theofanis DARDAGANIS, et al., As Trustees of the Retirement Fund of the Fur Manufacturing Industry, Plaintiffs,

v.

GRACE CAPITAL INC. and H. David Grace, Defendants.

No. 85 Civ. 6135 (RWS).

United States District Court, S.D. New York.

April 14, 1988.

See also 664 F.Supp. 105.

Gaston Snow Beekman & Bogue, New York City (Christopher E. O'Brien, of counsel), Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C. (Ronald L. Castle, of counsel), for plaintiffs.

Robert E. Anderson, New York City, for defendants.

## OPINION

SWEET, District Judge.

Plaintiff Trustees ("Trustees") of the Retirement Fund of the Fur Manufacturing Industry (the "Fund") have moved pursuant to Fed.R.Civ.P. 56 for an order granting summary judgment against defendants Grace Capital, Inc. ("Grace Capital") and H. David Grace (collectively, "Grace") on the issue of damages resulting from Grace's breach of his fiduciary duty as investment manager to the Fund. Upon the findings and conclusions set forth below, the motion is granted.

By the opinion dated June 26, 1987 (the "June 26 Opinion"), familiarity with which is assumed, partial summary judgment was granted in favor of the Trustees on the issue of Grace's liability for breach of its fiduciary duty to the Fund under Section 404(a)(1)(D) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104 (1985). The June 26 Opinion held that Grace Capital and Grace personally were jointly and severally liable to the Fund for all damages resulting from their violation of the Investment Management Agreement's ceiling on equity investments for the Fund. As to the issue of damages, however, the Trustees' proposed measure of damages was rejected, and the opinion gave instructions concerning the proper measure of damages following the Second Circuit's opinion in *Donovan v. Bierwirth,* 754 F.2d 1049 (2d Cir.1985).

The Trustees retained an expert witness, actuary Nancy R. Wagner ("Wagner"), who has calculated the measure of damages and described her calculations in affidavits submitted with the instant motion as described below.

### The Wagner Affidavits

The June 26 Opinion found that Grace first breached his fiduciary duty not to hold more than 50% of the Fund's assets in equity securities on June 30, 1983. Accordingly, using portfolio reports prepared by Grace, Wagner calculated the loss to the Fund from June 30, 1983 through October 31, 1984, the date on which the Trustees effectively terminated Grace as investment manager and began to liquidate the portfolio. Wagner found that for the pertinent period after June 30, 1983, defendants on average held 69.23% of the Fund's portfolio in equities. Thus, 19.23% of the portfolio was held in excess equities. To determine the portion of all equities that were "excess" equities, Wagner divided the percentage of excess securities (19.23%) by the percentage of the portfolio held in equities (69.23%). This calculation produces a percentage of 27.78%, which is the percentage of all securities that were "excess."

The June 26 Opinion found that Grace had breached only the general equity holding limit but had not wrongly invested in any particular equity security. Therefore, Wagner calculated correctly that 27.78% of any equity held by Grace for the Fund over the pertinent period was "excess." Wagner calculated that the accumulated loss to the Fund as of October 31, 1984 was $1,015,944, which represents the additional amount that the Fund would have realized had Grace not violated the 50% equity holding limit.

Wagner also calculated prejudgment interest on the total loss in order to reach the amount the Fund would have had at the present time if Grace had not breached his fiduciary obligation. To make that determination, Wagner assumed that the lost

sum of $1,015,944 would have earned interest from October 31, 1984 forward at rates equal to those reported on a commonly used index of fixed income instruments for the same periods—the Shearson/Lehman Brothers Government/Corporate Bond Index. Wagner calculated a total loss to the Fund in the amount of $1,503,182 as of February 29, 1988.

*Defendants' Opposition to Summary Judgment*

In opposition to the instant motion, Grace does not object either as to Wagner's methodology or as to the accuracy of her calculations. Instead, Grace challenges certain assumptions that underlie the Wagner calculation of damages. In particular, Grace contends (1) that certain equity securities, such as call options, preferred stock, the Teleco stock, and the Oak Industries stock, should not have been included in the damage calculation; (2) that prejudgment interest should not be calculated using the Shearson/Lehman bond index, and (3) that an award of attorney's fees would be inappropriate in this case. These issues raise questions of law that may be resolved on summary judgment without further fact-finding.

*The Oak Industries Stock and Other Equities*

One of the stocks Grace bought for the Fund was the common stock of Oak Industries. Following Grace's discharge in October 1984, the Fund was advised of a pending class action in California in which class representatives of the shareholders of Oak Industries claimed damages against directors and officers of Oak for malfeasance in office. *In re Oak Industries Securities Litigation,* Master File No. 83 0537–G(M) (S.D.Cal.1985). Settlement of that class action resulted in a payment of $233,357.54 to the Fund. In her calculation of damages, Wagner determined the portion of the Oak Industries stock that represented "excess" investment in equities, then determined the fractional portion of the Oak Industries settlement that was attributable to the Oak Industries investment that was "excess," and offset that amount against the damages otherwise calculated.

Grace contends that because of uncertainty about what the Fund's performance would have been absent the alleged fraud by Oak Industries' management, all the Oak Industries stock should be excluded in determining the percentage of equities held by Grace in the Fund portfolio. In other words, Grace asserts that the Oak Industries investment should be disregarded for the purpose of determining the damages from his breach of fiduciary duty.

Although part of the Fund's $1,189,-812.50 loss on the Oak Industries stock as of October 31, 1984 may be attributable to fraud by the Oak Industries management, the nature of Grace's breach of fiduciary duty precludes the exclusion of the Oak Industries stock from the damage calculation. Grace selected the Oak Industries stock for the Fund's portfolio, and Grace caused the Fund's equity holdings to exceed the contractually agreed 50% limit. The equity limit was set in advance by the Fund's Trustees with Grace to ensure compliance with ERISA's requirement for investment diversification and to place a ceiling on the Fund's exposure to the risk of loss inherent in equity investment.

The alleged fraud by the Oak Industries management is but one form of the risk of equity investment that the Trustees sought to limit by the contractual 50% ceiling on equity holdings. The loss that was incurred on "excess" Oak Industries common stock, even to the extent attributable to management fraud, was the kind of loss that the Investment Management Agreement was designed to limit.

The June 26 Opinion held that the Fund was not entitled to damages based on all the losses incurred on Grace's equity holdings but only with respect to that portion of the equity investments that constitutes "excess" under the Investment Management Agreement. Wagner's calculation of damages includes only "excess" Oak Industries stock and her treatment of the Oak Industries settlement properly credits Grace for the extraneous recovery on that same "excess." Therefore, Wagner's treatment complies with the prior opinion's holding and instruction on damages.

■ Grace also contends that he should be given "credit" for the post-termination performance of his portfolio and suggests that the determination of that performance raises a triable issue of fact. However, the breach of fiduciary duty committed by Grace in this case does not involve wrongful investment in any particular investment vehicle, and, therefore, the subsequent performance of that vehicle is not an issue. Grace is liable for his excessive investing in the equity sector of investments. The June 26 Opinion directed that damages for Grace's breach should be calculated by assuming that the assets misinvested in the equity sector would have been invested in the fixed income sector. In compliance with that instruction, Wagner assumed that the "excess" equity investment would have been liquidated at prevailing market prices when the "excess" arose and then transferred into the fixed income sector. Thus, the pertinent valuation dates are a series of dates, each representing dates on which Grace's excessive investments in equities arose or continued. Since Grace does not contest the mechanics of Wagner's computation and cannot contest the prices at which she assumed liquidation would have occurred, there is no subsequent performance issue in this case.

■ Finally, Grace contends that certain covered call options, preferred stock, and the Teleco common stock should not be counted as equity holdings because they allegedly involved less risk than is common for equity securities. Under the Investment Management Agreement, Grace was obligated to invest "in strict conformity" with the guidelines set by the Trustees. There is no basis for Grace's claim that the 50% limit on equities set by the Trustees applied only to common stock and not to preferred stock or other kinds of equities.

*Prejudgment Interest*

■ Under ERISA, 29 U.S.C. § 1109(a), a pension plan fiduciary, like Grace, found liable for breach of fiduciary duty must "make good to [the] plan any losses to the plan resulting from ... such breach...." A breaching fiduciary is further "subject to such other equitable or remedial relief as the court may deem appropriate...." *Id.* See also H.R.Rep. No. 533, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad.News 4639, 4655 (intention of Congress was "to provide the full range of legal and equitable remedies available in both state and federal courts."). Indeed, "it is well-settled that ERISA grants the court wide discretion in fashioning equitable relief to protect the rights of pension fund beneficiaries including the award of prejudgment interest." *Katsaros v. Cody,* 744 F.2d 270, 281 (2d Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984).

The purpose of a damage award against a breaching fiduciary is "restoration of the trust beneficiaries to the position they would have occupied but for the breach of trust." *Donovan v. Bierwirth,* 754 F.2d at 1056. That purpose subsumes "the power to award interest at a rate that will put the [pension plan] in the position that it would have occupied but for the ... breach." *Katsaros,* 744 F.2d at 281. Moreover, in this Circuit, "[a]n award of prejudgment interest is in the first instance, compensatory, and is customary in cases involving a breach of fiduciary duties." *Rolf v. Blyth, Eastman Dillon & Co.,* 637 F.2d 77, 87 (2d Cir.1980).

Grace began to exceed the 50% equity limit in June 1983, and the Fund began at that point to incur losses from Grace's wrongful actions. The June 26 Opinion specifically held, following *Donovan v. Bierwirth,* that these losses include what the Fund would have earned but for the excessive investment in equities. To restore the Fund beneficiaries to the position they would have held but for Grace's breach of fiduciary duty, interest must be awarded through the date of judgment. Absent Grace's breach of duty, the Fund would have had the money lost on the excess equity investments and would have invested it with the rest of its assets. In this respect, the lost earnings are not so much "prejudgment interest" in the classic common law sense as a necessary element of the make-whole remedy under 29 U.S.C. § 1109.

Grace's contention that prejudgment interest for the period prior to his termination should be awarded only at the prevailing 90–day Treasury Bill rate is inconsistent with ERISA and directly contradicts the June 26 Opinion which stated that "it is appropriate to calculate damages by taking the amount of money improperly invested in stocks during the period from June 30, 1983 on, that is, the amount represented by the excesses of 4% to 29% (or more), and multiplying it by the return made on the bonds during that same period, with any appropriate adjustments." June 26 Opinion at 14. Wagner's calculation accords with this instruction, and Grace does not challenge the accuracy of her computation.

Grace also contends that, for the period after his termination in October 1984, interest should be awarded only at the simple "legal" rate of 9%. However, as quoted above, the June 26 Opinion directs that interest measured by the Fund's actual earnings is appropriate "from June 30, 1983 on." No cut-off date is suggested. Moreover, the date of Grace's termination has no significance in relation to damages in this case. Grace's breach of fiduciary duty, and the accumulation of the Fund's losses, began on June 30, 1983. Grace's termination in October 1984 merely triggered the liquidation of the portfolio he held, thus necessitating a shift to a different index to measure the Fund's earnings. Wagner has appropriately presumed, in keeping with the June 26 Opinion, that Grace's accumulated "misinvestments" would, upon his termination, have been transferred to the Fund's new investment managers. Because the Fund's actual rate of earnings could not be calculated cost-effectively for one pertinent period, Wagner decided to adopt a widely-used index, the Shearson/Lehman bond index, as a proxy for the Fund's actual rate of earnings for the period after October 1984. Grace does not contest the validity of the Shearson/Lehman bond index as a proxy for the Fund's actual earnings.

The Second Circuit's decision in *Donovan v. Bierwirth* squarely places the burden on Grace to prove that the Fund's return on investment would not have been maintained, at least at historical levels. *See Schoenholtz v. Doniger*, 657 F.Supp. 899, 904 (S.D.N.Y.1987). Instead of raising a factual objection to the use of the Shearson/Lehman index, Grace relies as a matter of law on the statement of the court in *Donovan v. Bryans*, 566 F.Supp. 1258, 1265 (E.D.Pa.1983), that "where a trustee is chargeable with interest, he is chargeable with simple interest at the legal rate." The *Bryans* court recognized, however, the general principle that "[t]he determination of the appropriate rate of interest to compensate the beneficiaries for the [fiduciaries'] breach of duty is committed to the court's discretion." *Id. See Gilliam v. Edwards*, 492 F.Supp. 1255, 1267 (D.N.J. 1980) ("Determining the rate of interest recoverable is within the court's discretion...."). Thus, the cases cited by Grace do not contravene the rule in *Donovan v. Bierwirth* that lost earnings normally are to be determined with reference to the injured plan's actual earnings. Since Grace does not deny that Wagner calculated damages correctly on this basis, her measure of prejudgment interest will stand.

*Attorney's Fees*

Under ERISA, 29 U.S.C. § 1132(g)(1), whether to award attorney's fees to the prevailing party is left to the court's discretion. The factors to be considered by the court in determining whether to make such an award of fees are well settled and include:

(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action sought to confer a common benefit on a group of pension plan participants.

*Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 602 n. 9 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983).

Consideration of these factors bars an award of attorney's fees against Grace. In the instant case, there has been no showing that Grace acted in bad faith. Moreover, Grace has represented to the court that he is not able to satisfy an award of attorney's fees. Finally, under the circumstances of this case, the findings of liability and damages are a sufficient deterrent to others acting under similar circumstances. Therefore, the request for attorney's fees is denied.

Upon the findings and conclusions set forth above, summary judgment is granted in favor of the Trustees in the amount of $1,015,944 plus interest thereon to the date of judgment at a rate set in accordance with the Shearson/Lehman bond index over the relevant periods. The parties are directed to submit judgment on ten (10) days notice.

IT IS SO ORDERED.