Theofanis DARDAGANIS, Harry Eagelberg, Martin Geller, Arthur Kotoros, Paul Raphael, and Philip Simadiris, as Trustees of the Retirement Fund of the Fur Manufacturing Industry, Plaintiffs,

v.

GRACE CAPITAL, INCORPORATED and H. David Grace, personally, Defendants.

No. 85 Civ. 6135(RWS).

United States District Court, S.D. New York.

Jan. 8, 1991.

Arent, Fox, Kintner, Plotkin & Kahn (Ronald L. Castle, of counsel), Washington, D.C., Gaston & Snow (Christopher E. O'Brien, of counsel), New York City, for plaintiffs.

Mark G. Fresco, New York City, for defendants.

## OPINION

SWEET, District Judge.

Plaintiffs Trustees of the Retirement Fund of the Fur Manufacturing Industry (the "Fund") have moved for summary judgment on remand from the Court of Appeals. Defendants Grace Capital, Inc. ("Grace Capital") and H. David Grace ("Grace") oppose the motion, asserting that there are material facts in dispute concerning the proper measure of the Trustees' damages. For the following reasons, the motion is granted.

*Prior Proceedings*

The parties, facts, and prior proceedings are all described in detail in the earlier opinions of this court, *Dardaganis v. Grace Capital, Inc.*, 664 F.Supp. 105 (S.D. N.Y.1987) (*Dardaganis I*); *Dardaganis v. Grace Capital, Inc.*, 684 F.Supp. 1196 (S.D. N.Y.1988) (*Dardaganis II*), and the Court of Appeals, *Dardaganis v. Grace Capital, Inc.*, 889 F.2d 1237 (2d Cir.1989) (*Dardaganis III*), familiarity with which is assumed. The facts will be repeated here only as they are pertinent to the present motion.

The Fund is a multiemployer pension plan which provides pension benefits to several thousand current or former employees in the fur garment industry. Grace Capital was employed to manage Fund's investments from August 1981 until October 1984. Grace was the chief executive officer of Grace Capital.

On August 7, 1985 the Fund sued Grace Capital and Grace personally for misinvestment of the Fund's assets. In June 1987, the Fund was awarded partial summary judgment on the issue of liability, with the amount of its damages left open. *Dardaganis I.*

On December 29, 1987, the Fund moved for summary judgment on the damages issue. Each party submitted experts' affidavits on the proper calculation of damages. Nancy R. Wagner ("Wagner"), the Fund's expert, used a method that relied on periodic reports produced by Grace which summarized the activity in the Fund's accounts ("the Reports"). Wagner conceded that the use of the Reports rather than more detailed day-by-day or transaction-by-transaction data required certain assumptions which were likely to lead to some inaccuracy in her calculations, but stated that she had used the Reports because they "are the only data available to the [Fund] from which damages can be calculated." September 25, 1987 Affidavit of Nancy R. Wagner ¶ 7. The Fund also asserted, as part of its statement of undisputed material facts, that "these reports are the only source available to the [Fund] for calculating damages."

Wagner initially calculated that the damages were $1,015,944 as of October 31, 1984, and that interest accrued through August 31, 1987 and other adjustments resulted in a figure of $1,427,331.[1] She later adjusted this figure slightly and calculated that as of February 29, 1988 the total amounted to $1,503,182.

Philip C. Loomis ("Loomis"), Grace's expert, while disagreeing with a number of Wagner's assumptions, expressly stated that "[m]y methodology does not differ in material respects from that employed by Ms. Wagner." January 22, 1988 Affidavit of Philip C. Loomis ¶ 14. He initially calculated the Fund's damages as of at $85,657, and subsequently modified that amount to $54,059—less than six percent of the base amount ($1,015,944) calculated by Wagner. Loomis also disagreed with Wagner's interest calculations. Grace never disputed the Fund's statement that the Reports were the only data available from which damages could be calculated.

The Fund's motion was granted on April 14, 1988 with damages awarded in the amount of $1,015,944 plus interest, calculated using Wagner's method, from October 31, 1984 to the date of judgment. *Dardaganis II.*

Grace then sought reconsideration of this decision, which was denied in a memoran-

---

1. Wagner's calculation of prejudgment interest was based on the increase in the Shearson/Lehman Brothers Government/Corporate Bond In-dex (the "Shearson Index") for the period from October 1984 to the date of judgment.

dum opinion dated May 19, 1988. Judgment was entered on May 24, 1988 awarding the Fund damages in the amount of $1,530,610. Grace next moved to alter or amend the judgment, objecting to the amount of interest awarded for the period after October 31, 1984. On July 26, in another memorandum opinion, the motion was granted to the extent that Wagner's method of calculating interest was explicitly adopted for the period from October 31, 1984 through May 31, 1988 (yielding a figure of $1,473,312) with simple interest of 9% accruing thereafter to the date of judgment. An amended judgment was issued on September 6 awarding the Fund $1,507,-174.20.

Grace appealed this judgment, contesting both the summary judgment on the liability and the summary judgment on the amount of damages, and objecting to the assessment of damages against Grace personally. *Dardaganis III.* The Court of Appeals explicitly rejected Grace's complaints with Wagner's calculations, stating that

There may be cases in which a defendant comes forward with particularly reliable evidence that, had the funds not been improperly invested, they would have been put into a particular alternative investment. In such cases, it may be inappropriate to decide by summary judgment that the funds in question would have yielded a return equal to the average rate of the rest of the portfolio. *In this case, however, the affidavits of Grace and of defendant's expert did not assert any such particular facts.*

889 F.2d at 1243–44 (emphasis added).

The Circuit Court ultimately rejected most of Grace's other challenges as well. It did, however, accept the claim that summary judgment should not have been granted on the issue of the proper treatment of preferred stock when calculating the damages:

Though the record is less than clear, it appears that [the preferred stock] issue, to the extent that it involved the calculation of damages, involves a factual dispute that might not be appropriate for summary judgment.

*Id.* at 1245. Based on this finding, the appellate court vacated the judgment and remanded the case for further proceedings on this issue:

Though this dispute is extremely limited, we will vacate the judgment, order a remand, and direct the District Court to afford the defendants an opportunity to make a clear presentation of whatever evidence they have to support their [preferred stock] contention. If the District Court concludes that such evidence does not suffice to raise a triable issue ..., it may reenter the original judgment; if such a triable issue is presented, the Court should proceed to have this limited factual dispute resolved and make whatever adjustment in damages may be warranted

*Id.*

### The Instant Motion

In view of the Second Circuit's decision and in an effort to resolve the dispute once and for all, the Fund conceded its position, accepting Grace's contention that the damages calculation should be modified to exclude preferred stock. As this resolved the only issue left open on remand, the Fund accordingly moved for summary judgment on April 5, 1990. In support, it submitted an affidavit from Wagner stating that this adjustment would reduce the damages as of October 31, 1984 from $1,015,944 to $878,827 and that interest on this amount, based on the Shearson Index through February 28, 1990 and on simple 9% interest thereafter, yielded a total amount of $1,527,902 as of April 30, 1990.

In opposition, Grace offered an affidavit from Loomis in which, for the first time, Loomis took issue with Wagner's reliance on the Reports as the source of the data upon which the damages calculations were based. Although Loomis attempted to characterize his disagreement with Wagner as "due in considerable part to the fact that Ms. Wagner proceeded upon a misconception as to the facts," the real difference between the experts is that Loomis had access to detailed records of the particular transactions in the Fund's accounts ("the Transaction Records"), which contained

88

more detailed information than the periodic Reports. Based on these records, Loomis asserted that the Fund's actual damages amounted to $552,808.16 as of April 30, 1990.[2]

By memorandum opinion dated July 24, 1990, the court granted the Fund's motion to the extent that it recognized that the issue left open by the appellate court had been resolved. As for the amount of damages, the parties were directed to appear for oral argument concerning which calculation method was correct. That argument was heard on September 21, 1990 and the matter was taken under advisement.

*The Law of the Case Bars Consideration of the Transaction Records*

■■■ Loomis now claims that Wagner's reliance on the Reports in her calculations stemmed from her "misconception" of the facts, and that the only way to calculate the Fund's damages accurately is by using the heretofore unmentioned Transaction Records. However, including the Fund's original motion for summary judgment on the damages issue over two and a half years ago, Grace has had at least four opportunities in which to challenge Wagner's use of the Reports and to present the Transaction Records. Particularly in light of Wagner's explicit admission in her first affidavit that use of the Reports would necessarily result in some inaccuracies in her calculation and Loomis' concession seventeen months ago that his methodology was not materially different from that used by Wagner but that his calculation resulted in a damages figure which was less than six percent of the size of Wagner's, Grace's failure to object in a timely fashion will prevent it from prevailing here.

The Reports formed the basis of the damage calculations approved by this court and affirmed in relevant part by the Circuit Court. The law of the case doctrine precludes consideration of issues which have already been decided, either expressly or by necessary implication, by a higher court. *Riley v. MEBA Pension Trust,* 586 F.2d

968, 970 (2d Cir.1978); *Munro v. Post,* 102 F.2d 686, 688 (2d Cir.1939). As noted above, the mandate from the Circuit Court here was extremely limited, and the single issue left open has been resolved. The Court of Appeals expressly approved the accounting method used to determine damages. *Dardaganis III,* 889 F.2d at 1245. At this stage, this court is bound by that approval.

■■■ Of course, if the Fund's damages calculation is in fact incorrect, it is possible that the earlier judgment could be modified under Rule 60(b), Fed.R.Civ.P. However, the relief afforded by this rule applies only under extraordinary circumstances, which must be identified and proven by the moving party. *Salter v. Hooker Chemical, Durez Plastic & Chemical Div.,* 119 F.R.D. 7, 8 (W.D.N.Y.1988). Here Grace has offered no information to explain why the Transaction Records were not made available to the Fund earlier in the course of this litigation. *See United States v. Cirami,* 535 F.2d 736, 739 (2d Cir.1976) (denying 60(b) motion where movant provided no explanation for prior counsel's failure to oppose summary judgment motion).

■■■ Grace might succeed in a Rule 60(b) motion, by proving that its failure to produce the documents and Loomis' failure to object to Wagner's calculation methodology were due to excusable neglect or inadvertence, or that for some reason the Transaction Records constitute "newly discovered evidence which by due diligence could not have been discovered" earlier. While this court has an interest in the finality of judgments, its interest in deciding cases on the merits survives the entry of final judgment, to the extent that Rule 60(b) permits the court to relieve a party against whom final judgment has already been entered. *United States v. Cirami,* 563 F.2d 26, 33 (2d Cir.1977) (granting 60(b) motion based on adequate showing that relief from judgment was justified).[3]

---

**2.** Loomis calculated that damages as of October 31, 1984 amounted to $390,879.62, which with

interest and adjustments totalled $552,808.16 as of April 30, 1990.

**3.** Of course, another explanation for Grace's be-

Therefore, Grace's attempt to introduce a new method for calculating damages will be denied at this time, and Wagner's methodology will be accepted. However, as the Fund has not presented any argument for modifying the July 26, 1988 memorandum opinion, the proper amount to be awarded must be calculated as set forth in that opinion. Accordingly, the $878,827 loss as of October 31, 1984 is adjusted by multiplying it by 1.514, the ratio of the value of the Shearson Index on May 31, 1988 to its value on October 31, 1984, for an adjusted figure of $1,330,544. Subtracting $64,827 for the Oak Industry settlement yields an accumulated loss as of May 31, 1988 of $1,265,717. The Fund is entitled to simple interest on this amount at the rate of 9% from June 1, 1988 to the date of judgment.

*Conclusion*

For all of the foregoing reasons, Grace's objections to the amount of the damages are denied and the Fund's motion for summary judgment is granted. The parties are directed to submit judgment awarding the Fund damages in the amount of $1,265,717 plus simple interest thereon at the rate of 9% from June 1, 1988 to the date of judgment.

It is so ordered.

havior is that it believed there was a tactical advantage in not producing the Transaction Records earlier. It might have felt that it was wiser to oppose Wagner's initial $1,015,944 figure with Loomis' $54,059, particularly while still contesting the underlying liability, rather than to introduce more detailed records which might have strengthened the conclusion on liability and at the same time given rise to a damages calculation of $390,879.62.